UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MOTOR WERKS PARTNERS, LP,

    Plaintiff,

  v.

GENERAL MOTORS LLC,

    Defendant.

No. 14 CV 119

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Motor Werks currently owns and operates a standalone Cadillac dealership in Barrington, Illinois. Plaintiff wanted to move this dealership to a newly renovated auto mall, but defendant General Motors did not allow it, citing the fact that its Cadillacs would be sold and serviced too close to its competitors' cars. In this lawsuit, plaintiff contends defendant's refusal constituted a violation of the Illinois Motor Vehicle Franchise Act.

Plaintiff has moved for summary judgment on two of its six claims, seeking, in effect, a declaration that defendant's basis for refusing the relocation was unlawful. For the following reasons, the motion is granted in part. Defendant's refusal to approve plaintiff's relocation request did condition approval on entering into an exclusivity agreement, and brings defendant's conduct within the scope of the statute. There remain some factual disputes, however, that preclude judgment on the entirety of plaintiff's claims.

**I.     Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**II.    Background**

Plaintiff Motor Werks has operated as a dealer for defendant General Motors since opening a Cadillac dealership in 1989. With defendant's agreement, plaintiff moved its dealership in 2000 to the location in Barrington, Illinois, where it is today. In 2013, plaintiff asked defendant for permission to move back to its original location, which it was renovating. Plaintiff explained how the updated mall would substantially increase service capacity while simultaneously satisfying defendant's image standards. Plaintiff assured defendant it would have its own showroom, service entrance, dedicated stall, and technicians. Unlike the present facility, however, the new auto mall would feature cars other than Cadillacs, including defendant's competitors in the luxury category.

The parties' relationship is governed by a Dealer Agreement executed in June 2012. On the subject of relocation, Paragraph 4.4.2 of the agreement states ([58-1] at 9):

> If Dealer wants to make any change in the location(s) or Premises, or in the uses previously approved for those Premises, Dealer will give General Motors written notice of the proposed change, together with the reasons for the proposal, for General Motors [sic] evaluation and final decision in light of dealer network planning considerations. No change in location or in the use of Premises, including addition of any other vehicle lines, will be made without General Motors [sic] prior written authorization pursuant to its business judgment.

At the time the Dealer Agreement was executed, defendant's business judgment on the subject of dealership exclusivity was set forth in its written policy on non-dualing: "non-GM products should not be sold or serviced at GM dealerships." [46-3] at 2.

Accordingly, with defendant disliking the idea of its Cadillacs being sold alongside competing cars, it invoked its rights under of the Dealer Agreement and denied the relocation request. Defendant explained that the "overriding reason" for the denial was its standing non-dual policy.

Although the parties went back and forth trying to reach an arrangement both sides could accept, in the end, defendant refused to approve the relocation until plaintiff provided full physical separation for Cadillac sales and services. *See* [16] ¶ 15; [46-6] ¶¶ 1, 4. In response, plaintiff filed a six-count complaint in the Circuit Court of Cook County, asserting, at bottom, that defendant's conduct violated three portions of the Illinois Motor Vehicle Franchise Act (815 ILCS § 710/1 *et seq.*)— § 4(b) (barring manufacturers from acting arbitrarily, in bad faith, or

3

unconscionably), § 4(d)(8) (barring manufacturers from forcing dealers to underutilize their facilities), and § 4(g) (barring manufacturers from conditioning their approval of franchise changes on the dealer's willingness to enter into an exclusive use agreement). Defendant then removed the action to this court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332.[1]

Plaintiff has moved for summary judgment on Counts V and VI, which both pertain to § 4(g) and differ only in the relief they seek. Count V requests "judgment against [defendant] compelling [it] to approve the proposed relocation without requiring a separate stand-alone Cadillac facility," while Count VI seeks compensatory damages. Along these same lines, plaintiff's motion for summary judgment requests that the court "issue an Order . . . directing GM to approve the Motor Werks' request to relocate the Cadillac franchise to the South Barrington Road auto mall, and awarding damages, in an amount to be determined."

Despite these seemingly explicit requests for an injunction, plaintiff has more recently claimed that it wants only "a determination that GM's pre-condition to the proposed relocation violates the statute and an order that reflects GM may not impose that as a condition to approving relocation . . . ." 7/10/15 Tr. at 21:15–18. This revised request for relief is consistent with Illinois law. *See* 815 ILCS § 710/4(g) ("Any provision contained in any agreement . . . that is inconsistent with the provisions of this subsection (g) shall be voidable at the election of the affected dealer . . . ."). Plaintiff's motion will therefore be considered as seeking only this

---

[1] Plaintiff is a citizen of Illinois while defendant is a citizen of Michigan.

modified relief, and not an injunction or order compelling defendant to approve the relocation.

**III. Analysis**

The question before me is whether defendant (1) directly or indirectly, (2) conditioned the approval of the relocation, (3) on plaintiff's willingness, (4) to enter into an agreement, (5) which had the effect of requiring plaintiff to maintain exclusive facilities.[2] *See* 815 ILCS § 710/4(g). In contending the answer is "No," defendant focuses on the statute's use of the phrase "enter into" and argues that it never asked plaintiff to "enter into" anything in connection with the relocation. This is true: defendant did not ask plaintiff to sign anything in 2013 and therefore did not *directly* conditioned approval of the relocation on plaintiff's willingness to enter a prohibited contract. But that's not all the law prohibits. It also prohibits manufacturers like defendant from *indirectly* conditioning relocation on the entering into of an exclusive use agreement. And that's what happened in this case.

Paragraph 4.4.2 of the Dealer Agreement incorporates defendant's non-dualing policy through the paragraph's "business judgment" condition. The formal non-dual policy is defendant's business judgment on the question of exclusivity. *See* [54] at 20–21 ("GM never requested that the plaintiff enter into an exclusive use agreement. It simply declined to approve a proposed relocation consistent with its applicable policies."). When the parties renewed their franchise relationship in 2012, plaintiff's ability to relocate became necessarily conditioned on any new

---

[2] The statute calls this kind of agreement an "exclusive use agreement," 815 ILCS § 710/4(g), a term I'll also use as shorthand for the longer definition provided above.

5

facilities being exclusive. When this provision was later invoked by defendant, therefore, it constituted an indirect conditioning of approval on entering an exclusive use agreement.[3]

Put another way, defendant did something that could not be done all at once and did it sequentially. Such a strategy might be permissible under a law that prohibits direct conditionings alone. But § 4(g)'s broader application to indirect conditionings defeats defendant's attempted end run and brings the conduct within the law's scope. To read this statute any other way would be to attribute no meaning to the word "indirectly." Similarly, defendant's argument that "enter into" requires a prospective or potential agreement, but allows a manufacturer to require a dealer to sign onto the non-dual policy before any relocation request has been made, is not persuasive. Defendant told plaintiff, in effect, that it would not approve plaintiff's move because it entered into a non-dual policy, and honoring that policy was a condition of any relocation approval. This is the kind of indirect condition of exclusivity prohibited by the statute.

Defendant argues that the scope § 4(g) is limited by § 4(d)(8), which makes it a violation for a manufacturer to compel a dealer to underutilize its current facilities. 815 ILCS § 710/4(d)(8). Defendant says § 4(g) should be viewed through the lens of § 4(d)(8) and therefore read to prohibit a manufacturer only from (1)

---

[3] Defendant attempts to limit what qualifies as an "exclusive use agreement," noting the parties formerly had one, and that that agreement was something different from what is presented here. However, because the statute specifically defines this term, neither the parties' past conduct nor industry terminology controls. Instead, § 4(g) explicitly defines it as "any agreement that has the effect of . . . requiring that the dealer establish or maintain exclusive dealership facilities."

forcing a dealer to underutilize its current facilities, or (2) requiring a dealer to enter into an exclusive use agreement that requires exclusive facilities even if the facilities later become underutilized. Section 4(g) does not apply to this case, defendant explains, because neither plaintiff's present nor future facility is underutilized.

I disagree with this interpretation. Section 4(g) makes no mention of underutilization and nothing else in the Act suggests the limitation should be taken from § 4(d)(8) and read into the other portions of § 4. Moreover, the fact that the Illinois General Assembly addressed underutilization in § 4(d)(8) but not in § 4(g) demonstrates that it was aware of the concept, but that it purposefully chose not to include it in § 4(g). Defendant's cases on statutory interpretation do not call for a different reading of the Act. The language of § 4(g) is plain and unambiguous, the broader construction is consistent with the Act's remedial purpose, and no established Illinois precedent will be offended. *See Harvel v. City of Johnston*, 146 Ill.2d 277, 283–84 (1992); *Michigan Avenue National Bank v. County of Cook*, 191 Ill.2d 493, 508 (2000); *Forus Mortgage Corp. v. Dwyer*, 214 Ill.2d 253, 269–70 (2005); *see also Kawasaki Shop of Aurora, Inc. v. Kawasaki Motors Corp.*, 188 Ill.App.3d 664, 670 (2d Dist. 1989) ("The [Illinois Motor Vehicle Franchise] Act has been said to have been created for the benefit of the dealers and must therefore be liberally construed to carry out the legislative intent.").

Defendant argues that it also did not violate the statute because it "never approved anything, conditionally or otherwise." Defendant essentially believes the

statute should be read to apply only to consummated deals, and not to deals that were not consummated as a result of the proscribed conduct. Such a reading is inconsistent with the statute's plain language, which makes conditioning the *actus reus*, so to speak. *See* 815 ILCS § 710/4(g) ("it shall be deemed a violation for a manufacturer . . . *to directly or indirectly condition*. . . the approval of the relocation . . . on the willingness of a dealer . . . to enter into . . . an exclusive use agreement . . . .") (emphasis added).

Defendant argues that multiple courts throughout the country have recognized the legitimate business interests in having exclusive standalone facilities. *See* [54] 22–25. None of these cases applied language similar to that contained in § 4(g), however, so they do not help in interpreting the Illinois law.

\* \* \*

Although this reading of § 4(g) favors plaintiff's theory of the case, I conclude summary judgment is nonetheless inappropriate at this time in light of remaining factual disputes. Even if a manufacturer conditions relocation on exclusive use, no violation has occurred where separate and reasonable consideration is offered and accepted. Plaintiff claims it never received any separate consideration to remain exclusive, but defendant's written non-dual policy states that dealers who remain exclusive are alone entitled to certain benefits, including "Dealer Network Change Assistance," "an additional dealer point," another GM brand, and a "facility image stipend." [46-3] at 3. These benefits are not available to dealers who do not follow

8

the non-dual policy, so they could reasonably constitute "separate and reasonable consideration."[4]

Because there remain disputes about whether GM violated § 4(g),[5] I do not reach defendant's arguments that 5 ILCS § 710/4(g) is preempted by federal trademark law or that it constitutes an unconstitutional taking. Defendant may affirmatively present these arguments at a later stage.

## IV.  Conclusion

Plaintiff's motion for summary judgment [46] is granted in part and denied in part.

ENTER:

                                      Manish S. Shah
                                      United States District Judge

Date: 9/29/15

---

[4] Defendant's supplemental submission suggests the company might not have actually required complete exclusivity when negotiating the proposed relocation with plaintiff, because there were discussions of an arrangement in which some Cadillac dealership operations could be conducted in the same facility as dealership operations for competing cars. If true, however, this arrangement would not take defendant's conduct outside the scope of § 4(g), because defendant would still be requiring plaintiff to maintain exclusive facilities—the ones housing Cadillac's "customer touch points." [87] at 1. Again, the statutory definition of an exclusive use agreement is one that "has the effect of . . . requiring that the dealer establish or maintain exclusive dealership facilities." 815 ILCS 710/4(g). Requiring an exclusive customer-touch-points facility would still fall within this definition.

[5] In an effort to demonstrate additional disputes of fact, defendant enumerates a number of factors it was entitled to consider before approving a change to plaintiff's franchise, including site approval, milestone commitments, image requirements, capital requirements, and other terms and conditions. These factual matters, however, do not speak to whether defendant's condition on relocation violated Illinois law. Instead, they speak to whether plaintiff was damaged by such a violation. It may be, for example, that the non-dual policy did not cause any harm to plaintiff's relocation plans because relocation would never have been approved even if exclusivity were off the table.